LAMON and others, Respondents, vs. FRITZ, Appellant.

*January 10 — January 30, 1894.*

*Contracts: Interpretation: Evidence.*

In an action to recover for making railroad ties under an oral contract, plaintiffs testified that defendant told them to make the ties the same as they had been making them for M., a neighbor. De-

fendant, in his direct examination, testified that he told one of the plaintiffs he could go to work "on the same terms he was working for M. as to specifications, and that the terms were to be the same as with the ties he was making for M.;" but on cross-examination he said: "I told him to go on and make the ties just the same as he had been for M. That was the words used." *Held,* that the court was justified in assuming that by the contract the ties were to be *made the same* as those of M., and not on the same terms, and in excluding evidence of the terms of the contract with M. in respect to the manner in which the quantity of ties was to be determined, etc.

APPEAL from the Circuit Court for *Chippewa* County. The facts are stated in the opinion. The defendant appeals from a judgment in favor of the plaintiffs.

*L. J. Rusk,* for the appellant.

For the respondents there was a brief by *W. H. Stafford* and *Vesper Morgan,* and oral argument by *Mr. Stafford.*

ORTON, C. J.    This action, consolidated of two actions, stands now in the names of the three plaintiffs against the defendant, on a contract between them for making 3,480 railroad ties of timber on the defendant's land, at the price of seven cents per tie, and for a lien on said land therefor. The case was tried before the court with a jury, but the following was the only question submitted to the jury, viz.: "How many ties did plaintiffs make for defendant, of the kind contemplated by the parties when the contract was made?" and the jury answered "3,480 ties." This number of ties, at seven cents each, constituted the judgment, exclusive of interest and costs and lien on the land, and the defendant has appealed therefrom. The main questions presented on this appeal are, *first,* What was the language used by the parties in making the contract? and *second,* Is there any ambiguity in the language used that required either the court or jury to put any construction upon it, outside or beyond its plain and obvious meaning?

The learned counsel of the appellant contends that the language used means that the plaintiffs agreed to cut said ties *on the same terms* as they were cutting ties for another person near by, by the name of Morrissey. On the other hand, the learned counsel of the respondents contends that the language used means that they were to *make* the ties the same as they had been making ties for Morrissey. It is conceded, however, on both sides, that the price was to be seven cents per tie. The testimony of the plaintiffs, as to the language used, was as follows: "Go on and make the ties, and make them the same as we had been making them for Morrissey." The testimony in chief of the defendant, as to the language used, was as follows: "I told him he could go to work any time he wanted to on the same terms he was working for Morrissey as to specifications, and that the terms were to be the same as with the ties he was making for Morrissey." On cross-examination the defendant testified as follows: "I told him to go on and make the ties just the same as he had been for Morrissey. That was the words used." This last testimony of the defendant, and the testimony of the plaintiffs as to the contract, are substantially the same. The language is so plain, even where the testimony differs, that it certainly does not require any special interpretation. By the testimony of the plaintiffs, the ties were to be *made* (or manufactured) *the same* as those of Morrissey; and by the first testimony of the defendant the ties were to be made *on the same terms* as the Morrissey ties. The difference is obvious and material. But the defendant corrected his testimony on cross-examination, so as to agree with the plaintiffs'. The jury found the plaintiffs' version of the contract the true one.

First, then, such was the contract; and, secondly, the jury does not seem to have had any difficulty in understanding what the language meant. The difference be-

tween *making* ties and the *terms* upon which they are made is quite distinct and material. The first exception taken by the learned counsel of the appellant will clearly and practically show this difference. The plaintiff, as a witness, was asked by defendant's counsel, on cross-examination: "How were you paid by Mr. Morrissey? What was Morrissey's method of determining the amount of the ties? How were the ties you made for Mr. Morrisey to be counted or estimated?" The court sustained the plaintiffs' objections to these questions, and the defendant excepted. The court probably understood that the defendant had finally agreed with the plaintiffs as to the language used in making the contract, and rejected the testimony as to the *terms* of the Morrisey contract; and we think the court was correct in this ruling. The defendant's counsel asked the court to direct a verdict for only 1,740 ties, "according to inspection," at seven cents each. This raised the same question as to whether the plaintiffs' ties should not be first hauled to the railroad, and be there inspected and counted the same as Morrissey's ties. The plaintiffs' ties were counted in the woods as fast as made, and entered in a book; and as to the dimensions of the ties and the kind and quality of the timber the plaintiffs claimed that the defendant knew at the time just how the ties were made, and made no objection to them, and finally ordered the plaintiffs to cut the timber closer or cleaner, which made some of the ties under size for their inspection at the railroad like the Morrissey ties. These were questions for the jury on the evidence. The court properly refused to direct such a verdict.

The other exceptions are to be instructions of the court. If there were any errors in the charge, they are not specifically pointed out any further than by inclosing large portions of the charge within brackets, and all such appear to be unexceptionable. The instructions throughout, if there is

Lamon and others vs. Fritz.

any difference at all, appear to be very favorable to the defendant.

Lastly, the court did not err in denying the defendant's motion for a new trial. The verdict of the jury and the judgment are clearly supported by the testimony, and appear to be just.

*By the Court.*— The judgment of the circuit court is affirmed.